IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FLORINE COSTELLO** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 2952 |
| | ) |
| **JO ANNE BARNHART, Commissioner** | ) |
| **of Social Security,** | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Florine Costello ("Costello") has filed a complaint against Jo Anne Barnhart (the "Commissioner") seeking review of Administrative Law Judge Steven H. Templin's ("ALJ") decision that Costello owed the Social Security Administration ("SSA") $23,180 and that misinformation by SSA personnel in January of 1994 did not cause her to not file an application for divorced spouse benefits at that time. Both she and the Commissioner have now moved for summary judgment. I deny Costello's motion for summary judgment and grant the Commissioner's motion.

I.

Costello married Gilbert Costello on April 28, 1952, and remained married to him until their divorce on March 12, 1982. She subsequently began living with Leonard Ramsey ("Ramsey") and married him on March 30, 1987. While they were married, Costello and Ramsey applied for old-age benefits. Costello began receiving benefits in June of 1992, both on her own work record and through

wife's insurance benefits ("WIB") from Ramsey's account. At this time she used Ramsey's last name. Costello and Ramsey divorced in July of 1993, but Costello continued to receive benefits, both from her work record and through WIB from Ramsey's account. In March of 2002, Costello went to the SSA office in Joliet, Illinois (the "Joliet SSA office") to inform the SSA that she had recently changed her name from Ramsey back to Costello. After several meetings with SSA personnel, Costello received a letter from the SSA on May 26, 2002, informing her that the SSA had overpaid her $23,180 in WIB to which she was not entitled because she had not been married to Ramsey for ten years. In June 2002, the SSA began recouping the overpayment by withholding her entire monthly benefit.

On June 29, 2002, Costello filed a Request for Reconsideration, but the SSA issued a Notice of Reconsideration on September 23, 2002, finding that its original overpayment determination was correct. Costello appealed this decision and received a hearing before the ALJ on January 15, 2004. At that hearing the SSA was not present, but did present written evidence and argument. Costello and her two adult daughters, Patricia Clower ("Clower") and Karen Smith ("Smith"), did attend the hearing and testified.[1] Costello testified to the general circumstances of her marriages and divorces. She also testified that the first week

---

[1] Clower testified on a point unrelated to this appeal.

of January of 1994, she and Smith went to the Joliet SSA office because she wanted to "see which [former husband's benefits she] could get the most money from." She brought with her the social security numbers of her former husbands and copies of her divorce decrees from both so that the SSA could "compare each one, see [from] which one [she] would get the most" benefits.[2] She testified that upon entering the office she was directed to the booth of an SSA employee.[3] The employee asked Costello how he could help her and she told him, "I want to find out from which of my ex-husbands I can pull the most benefits." She testified that she had both divorce decrees with her in a folder and placed the folder opened before the SSA employee. She then gave him the social security numbers she had brought with her. She testified that the employee "was working the keyboard" but that neither she nor Smith could see the screen. She said that she "asked him which one [and] he says I can't understand why you are on Ramsey. Oh, I

---

[2]Costello argues that she also brought copies of her marriage certificates with her. Although this is not directly clear from the record, during her hearing in front of the ALJ she referred to the fact that at the hearing she had with her the "very folder" she had with her when she went to visit the Joliet SSA office in 1994, and that her "[m]arriage license and divorce and everything should be right in there, I'm sure." The ALJ did not note this in his decision, referring only to the fact that Costello brought copies of her divorce decrees, but my decision does not rest upon this evidentiary point so I need not address it in this opinion.

[3]At the time of her hearing, both Costello and Smith stated that they did not know the name of the SSA employee with whome they spoke.

3

see he signed for you." She said he further said to "stay with Ramsey. You can get the most from Ramsey." Costello testified that this conversation lasted between five and ten minutes, and that the employee did not write anything down for her. She testified that she did not think about this incident again for the next few years because she "thought he knew what he was doing." She said that in 2002 she decided to have her name changed and consequently went back to speak to the SSA, and that at this time the SSA raised the issue of the improper benefits with her.

Smith, Costello's daughter, also testified during the hearing. She testified that she went with her mother to visit the Joliet SSA office. Upon entering the office, she and Costello were directed to a service counter. Smith testified that she remembered Costello "inquiring who of her ex's, meaning her ex-husbands, would she be better off being under or receiving benefits." Like Costello, Smith testified that Costello had the "divorce envelopes" and "a notation giving Social Security numbers" and that she "sat them on the service counter." She testified that they spent five to seven minutes with the SSA employee, during which time he typed the Social Security numbers into his computer and asked "why are you with [Ramsey]" and then stated "something to the degree of oh, I see, he signed for you. I know nothing about it. It's like okay, you should stay with Leonard."

On September 8, 2004, the ALJ issued his opinion finding that the SSA had overpaid Costello and that it was entitled to a repayment of $23,180. In reaching this decision the ALJ also found that in January of 1994, SSA personnel "did not provide [Costello] with misinformation that caused her not to file an application for divorced spouse insurance benefits on the account of wage earner Gilbert P. Costello." The ALJ's decision explained that Costello was not truly contesting that there had been an overpayment, but instead was relying on federal regulations to argue that but for the misinformation from the SSA employee in 1994, she would have filed an application for benefits from her first husband that would have offset the overpayment. However, the ALJ stated that the federal regulations concerning misinformation only concern "*active* misinformation provided by [SSA] personnel when a person seeks to apply for specific benefits." He concluded that these regulations do not cover Costello's situation where she only provided the SSA employee "the *opportunity to know* that she was no longer entitled to [WIB] on her second husband's account" and that the employee only omitted the opportunity to tell her that she was not entitled to these benefits. Further, the ALJ stated that Costello had not identified the employee who provided misinformation to her, and had "failed to establish by competent evidence that she was provided misinformation by [an SSA] employee" that would allow a finding of

5

a "deemed application" for divorced spouse's benefits through her first husband.

On March 18, 2005, the Appeals Council denied Costello's Request for Review, stating that there was no satisfactory evidence that in January of 1994 Costello informed the SSA that she and Ramsey "were married in 1987, i.e. for a period of time less than ten years prior to [her] divorce, such as would be a terminating event. The date of [her] marriage to [Ramsey] would not have appeared on any computer printout on [Ramsey's] record obtainable by the interviewer." The Appeals Council also noted that since the ALJ's decision, Costello had obtained the name of the employee at the Joliet SSA office with whom she spoke in January of 1994, but that even considering this evidence, "the evidentiary record as a whole is not sufficient to establish" that Costello received misinformation as defined by 42 U.S.C.A § 202(j)(5) (2005).

Because the Appeals Council denied Costello's Request for Review, the ALJ's decision is a final decision appealable to this court. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000). Costello subsequently filed this complaint, and both parties have now filed cross-motions for summary judgment.

II.

I must uphold a final decision of the Commissioner as long as the decision is supported by substantial evidence and is free of legal error. See Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir.

2002). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). I must remand the case if the Commissioner's decision lacks evidentiary support or is so poorly articulated that it prevents meaningful review. *Steele*, 290 F.3d at 940. However, I may not "decide facts anew, reweigh the evidence, or substitute [my] judgment for that of the ALJ." *Henderson*, 179 F.3d at 512 (quoting *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997)).[4]

### III.

Costello has conceded that she was not entitled to the benefits she received from Ramsey's earnings, and also concedes that she must repay the SSA the overpayment that she received. The only issue Costello raises on appeal is whether the Commissioner should have offset the overpayment by the amount Costello would have received had she applied for WIB for her first husband's earnings in January of 1995 (the time at which he first became

---

[4] In this case, the Appeals Council declined to review the decision of the ALJ but augmented the ALJ's decision by relying on a specific fact (that the SSA employee did not know and had no reason to know that Costello had been married to Ramsey for less than ten years) that was not specifically articulated in the ALJ's decision. Because the Appeals Council is the final decisionmaker for the Commissioner, I consider this factual finding along with the factual findings of the ALJ in determining whether the Commissioner's decision is supported by substantial evidence and is free of legal error.

7

eligible for retirement benefits). However, I find on the record before me that the ALJ's decision to the contrary is supported by substantial evidence.

Costello's argument hinges on a "deeming" statute and regulation. See 42 U.S.C.A. § 402(j)(5) (2005); 20 C.F.R. § 404.633 (2005). These deeming provisions provide relief for social security applicants who, as a result of misinformation provided by SSA employees, failed to apply for benefits for which they were otherwise entitled. The deeming provisions "deem" the date for which these applicants applied for benefits to be the later of the date they were misinformed or the date on which they were otherwise eligible. The statutory deeming provision provides:

> In any case in which it is determined to the satisfaction of the Commissioner of Social Security that an individual failed as of any date to apply for monthly insurance benefits under this title by reason of misinformation provided to such individual by any officer or employee of the Social Security Administration relating to such individual's eligibility for benefits under this title, such individual shall be deemed to have applied for such benefits on the later of--
>
> (A) the date on which such misinformation was provided to such individual, or
>
> (B) the date on which such individual met all requirements for entitlement to such benefits (other than application therefor).

42 U.S.C.A. § 402(j)(5) (2005). This statute was enacted to address the frequent (and unsuccessful) estoppel claims brought by

8

claimants who argued that due to misinformation provided by the SSA they had failed to make timely applications for social security benefits. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 429 (1990) (explaining history of Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2481, in discussion of unsuccessful estoppel claims brought against governmental agencies).

The more detailed "deeming" regulation covering the SSA explains that "[i]t is possible that in responding to [an inquiry about filing an application for benefits], we may have given you misinformation about your eligibility for benefits . . . . If this happened, and later an application for such benefits is filed with us, we may establish an earlier filing date under this section." 20 C.F.R. § 404.633(a). Like the deeming statute, this deeming regulation provides that the SSA may deem the filing date for an application of benefits to be the later of (1) the date on which misinformation was provided to an applicant or (2) the date on which an applicant met the requirements for an entitlement of benefits. 20 C.F.R. § 404.633(b)(1)(i). The regulation only applies where the SSA determines that an applicant "failed to apply for monthly benefits . . . because we gave you misinformation about your eligibility for such benefits." *Id.* The regulation defines "misinformation" as "information which we consider to be incorrect, misleading, or incomplete in view of the facts which you gave to the employee, or of which the employee was aware or should have

been aware, regarding your particular circumstances." 20 C.F.R. § 404.633(c). The provision further states that "for us to find that the information you received was incomplete, the employee must have failed to provide you with the appropriate, additional information which he or she would be required to provide in carrying out his or her official duties." *Id.*

Costello also argues that provisions within the SSA's internal Program Operation Manual System ("POMS") dictate that I resolve her appeal in her favor. However, the POMS has no legal force; it is not a regulation and therefore does not bind the Commissioner. *See Pulley ex rel. Pulley v. Bowen*, 817 F.2d 453, 454 (7th Cir. 1987) (holding POMS did not bind Secretary of Health and Human Services); *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (holding that the SSA Claims Manual is not a regulation, has no legal force, and does not bind the SSA).

Relying on these deeming provisions and the SSA's POMS, Costello argues that she was misinformed within the meaning of their provisions because she went to the Joliet SSA office to determine "which ex-husband's account it would be better for her to receive WIB from" and that the SSA employee failed to "develop evidence" as to her entitlement to her first husband's account.[5]

---

[5] Costello also presents arguments why the evidence she presented was sufficient to show misinformation as required by 20 C.F.R. § 404.633(d), but this is unnecessary. The Appeals Council recognized that Costello had later provided evidence of the name of the employee with whom she spoke, and the decisions of both the

10

However, Costello has provided no authority that would suggest that the SSA employee here gave misinformation to her. Costello did not provide the SSA employee with, nor did he have available from another source, information that would have allowed him to know that she was married to Ramsey for less than ten years. Costello does contend that she had marriage certificates from her two marriages in the folder she set on the service counter, and that the employee could have reviewed this information or at the least, when informed that Ramsey was Costello's ex-husband, should have inquired about the length of both marriages. However, while a conscientious employee would perhaps have done so, Costello has pointed to no authority to support the legal proposition that the SSA employee was required to do so.[6] Therefore, any information

---

Appeals Council and the ALJ credited that the conversation with the SSA employee took place as Costello claimed it did. The evidentiary deficiency that the Appeals Council pointed to was the fact that Costello had not presented credible evidence that the SSA employee knew or should have known that Costello had been married to Ramsey for less than ten years, making her ineligible for benefits under his account.

[6]Even the POMS, which is not binding here, does not contain provisions that would require an employee to do so in this case. The examples in the POMS concerning misinformation apply in situations where an individual mentions a potential source of benefits to an SSA employee and the employee fails to tell the individual about the source of benefits or to include that source on an application for benefits. See GN 00204.008(G). In Costello's case, the SSA employee failed to ask additional questions or review information made available to him (but that he did not know was relevant) that would have revealed that Costello was not entitled to the benefits she currently received and therefore should seek alternative benefits.

11

the SSA employee gave Costello, although incorrect, was not misinformation as defined by the relevant statute and regulation. Although this creates an unfortunate result in Costello's case given that Costello went to the SSA to ask about her benefits and was given information, upon which she relied, that turned out to be incorrect, the Appeals Council and the ALJ were legally correct in determining that Costello was not misinformed. *See Steele*, 290 F.3d at 940. Further, the Appeals Council's factual determination that the SSA employee did not know and should not have known that Costello had been married to Ramsey for less than ten years is supported by substantial evidence. *See id.* Therefore, I must affirm the Commissioner's decision.

IV.

For the reasons stated above, I affirm the Commissioner's decision, and deny Costello's motion for summary judgment and grant the Commissioner's motion. This case is therefore dismissed.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: September 25, 2006